## Lankford v. Commonwealth.

(Decided November 13, 1925.)

## Appeal from Clay Circuit Court.

1. Homicide—Giving Conspiracy Charge Held Not Error, where Verdict Based on Actual Shooting by Defendant.—Under joint indictment of defendant and another for murder, and for conspiracy to murder deceased, the giving of a conspiracy charge on separate trial of defendant was not error, where it was clear that jury based verdict on belief that defendant actually did the shooting apart from any alleged conspiracy.

2. Homicide—Evidence Held to Show no Basis for Self-Defense Instruction, but Giving it Not Prejudicial, where for Accused's Benefit.—In a prosecution for murder under evidence showing that there was an eye-witness to shooting, though witness did not recognize one shooting, who was concealed in weeds, there was no basis for a self-defense instruction, but it could not be prejudicial to defendant, for it offered a chance of acquittal to which he was not otherwise entitled.

3. Homicide—Erroneous Conspiracy Instruction Not Prejudicial, where Conviction Not Based on it.—In a prosecution for murder, an erroneous conspiracy instruction was not prejudicial error, where conviction was not based on it.

4. Homicide—Direction Not to Consider Any Evidence of Conspiracy Unless Jury Believed Conspiracy to have Been Established by all Evidence Held Proper.—In prosecution for murder, where evidence tended to show conspiracy of defendant and another in nature of threats by other in absence of defendant, direction to jury to not consider such evidence against defendant unless conspiracy had been established from all the evidence was proper.

5. Homicide—Evidence that Defendant was Engaged in Liquor Traffic Held Competent to Show Motive, where Deceased was Attempting to Break Up Such Traffic.—In prosecution for murder, where deceased as an officer was attempting to break up traffic in liquor, it was competent to show that defendant was engaged in such traffic by evidence of home brew found in his place, as furnishing a motive for commission of crime.

6.   Criminal Law—Permitting Witness to State Opinion as to who Man
     Running from Scene of Shooting was Held Not Error Under Cir-
     cumstances.—In prosecution for murder, where witness stated he
     knew defendant well, and man seen by him running from scene of
     shooting was about defendant's size, and wore clothing like de-
     .fendant's, and there had been positive identification by another wit-
     ness of same man, permitting witness, after statement that he did
     not know who the man running away was, to express his opinion
     who it was, was not prejudicial error.

W. W. RAWLINGS, R. L. POPE and F. L. HUFF for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.
BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
.Affirming.

Melvin Gregory was shot and killed on the night of
August 26, 1924, about 9:30 p. m. at a point just across
the river from Harlantown, in the county of that name.

Appellant and Smith Ball were jointly charged with
his murder, and with being in a conspiracy with each
other to murder Gregory, and that while such conspiracy
existed, and pursuant thereto, appellant shot and killed
Gregory.

The Commonwealth sought and obtained a change of
venue, and the case was by proper orders transferred to
the Clay circuit court, where appellant on his separate
trial was found guilty and sentenced to confinement in
the penitentiary for life. From that judgment this ap-
peal is prosecuted.

Gregory lived at a small town called Baxter, across
the Cumberland river from Harlantown, and there was a
footbridge across the river from Harlantown to a point
near his home. Appellant lived some three or four hun-
dred yards down the railroad track, and on the opposite
side of the river, where he conducted a store and resided
in the same house. His store and living quarters were
owned by Ball, and Ball had previously lived adjoining
or near the same property with his family, but had
shortly theretofore removed some two or three miles
down the river to a town named Loyal. The Cumber-
land river at that time at the point between appellant's
store and the town of Baxter was very low and easily
crossed, even on foot.

Gregory, some weeks prior to the homicide, had been appointed by the county court a county patrolman, and as such had been active in ferreting out and prosecuting persons charged with infractions of the law, and particularly those of the prohibition law. It appears that both appellant and Ball were under suspicion as to such latter infractions, and Gregory is shown to have been around appellant's place of business several times shortly before the killing, presumably for the purpose of procuring evidence and instituting proceedings against him. Some weeks before the homicide, at or near appellant's store, while Gregory had custody of a man he had arrested for drunkenness, Ball and his son took the prisoner from him, and Gregory claimed that Ball's son had done so under the pretext that he was a federal officer. Accordingly Gregory instituted proceedings before a federal commissioner at Pineville charging Ball and his son with impersonating federal officers, and such proceeding was still pending at the time of the killing. Likewise upon one occasion a short time before the homicide, when Gregory was at or near the store of appellant, the latter discharged a pistol in his store, and, as claimed by Gregory, made threats and otherwise recklessly handled the firearm. As the result of this incident Gregory caused a warrant to be sworn out against appellant in the county court charging him with the reckless use of firearms, and that charge had only recently been heard and disposed of in the county court when the homicide occurred. Ball and his son made frequent visits to the store of appellant, stopping there on their way to and from Harlantown as many as two or three times a day, and it is apparent from the great amount of circumstantial evidence in the record that Gregory believed they were cooperating with each other in the illicit handling and selling of intoxicants. He likewise believed that the store was the base or headquarters of such operations, and probably went there often with the view of obtaining evidence, and with the ultimate purpose of instituting proceedings which would result in its cessation. There is likewise evidence that each appellant and Ball had upon more occasions than one made threats against Gregory, some of them more or less indirect.

The evidence as to the actual killing is wholly circumstantial. There was used on the trial in the circuit court a map which is not in this transcript, and which

would doubtless enlighten this court greatly as to the relationship of the various places referred to in the evidence to each other.

Gregory and a young man 17 years of age named Hall crossed the footbridge together and then went a short distance to the railroad track near a cattle guard, and stood there a while talking before they were to separate, Hall living on the hill above the railroad track, and Gregory down the railroad track. Near the cattle guard a few feet from them were some high weeds, and while they were so standing on the railroad track a shot flashed from those woods, and Hall immediately ran towards his home. Two other shots quickly followed the first, and then there was a short lull when four other shots were fired. Hall did not see or recognize anybody, but only saw the flash of the shot coming from the weeds. When the firing was over Gregory was found with three wounds, two in the back to the right of his spine, and another over or near his right hip bone, all three ranging upward and two of them going through. He lived only a few hours, and died without having made a statement so far as this record discloses, except that one witness testifies he stated when first reached that he did not know who shot him. The condition of the weeds indicated that one person, and only one, had been secreted there, and that person probably lying down. Some distance down the railroad, and in the direction of where appellant lived, there resided Hugh Smith and his wife in a home about 65 or 75 feet from the railroad track; they together with many other residents of the locality heard the shooting and went out into their yard toward the railroad track, and while they were there a man ran rapidly down the railroad track. Mrs. Smith positively identifies appellant as that man, while her husband testifies in substance that he and his wife walked out toward the railroad track within about fifty feet of it, his wife being a little nearer to the track than he, when they saw a man come running fast down the railroad, coming from the direction of the shooting; and that while he did not recognize the man he believed it was appellant because he was about his size, and the clothing he wore looked like his clothing; that he knew appellant well and the person continued down the railroad. There was evidence that it was quite a dark night, although Smith and his wife each say it was not so dark that they could not have recognized the man. There is also evidence that some dis-

tance away was an electric light burning, and that the lights from the main town of Harlan across the river to some extent cast their rays to that point. The Smiths also had boarding with them at the time three persons who were either on the front porch or some little distance further from the railroad track than were the Smiths; but only one of those persons was introduced as a witness, and he testifies that he saw the man running rapidly down the railroad track, but did not know him at the time, but that he was a small man.

Upon appellant's arrest there were found at his home certain articles of wearing apparel, some of which were wet as if he had crossed the river in them the night before they were found.

In addition to this bloodhounds were telephoned for on the night of the homicide, and one of them reached the scene and was put upon the trail the next morning about eleven hours after the shooting. The bloodhound first took the trail up the railroad and across the foot-bridge, but upon being again placed upon the trail at the point in the weeds, where the person firing had lain, took the trail down the railroad and across the river and went to a point not far from appellant's home.

While we do not under these circumstances attach much importance to the trail so followed by the blood-hound there were numerous other circumstantial facts given in evidence, unnecessary to go into, tending to point to appellant as the guilty person. It is sufficient to say that the evidence of the two Smiths was in some considerable measure corroborated by numerous circumstances, insignificant in themselves, but significant as a whole.

The motive was shown, the defendant was positively identified by one witness running from the place immediately after the shooting, and that identification was corroborated by two other witnesses who saw some similar person so running at the time. While it is true some of the circumstantial evidence relied upon was in a measure explained or attempted to be explained by appellant's witnesses, these things were all questions for the jury, and we entertain no doubt that the case was properly submitted to the jury.

The court gave a conspiracy instruction, and it is earnestly insisted that this was error, for the reason that there was no evidence of conspiracy; but, as it

appears from this record that Ball has not yet been tried·
on the charge of conspiracy, we deem it inadvisable to go
into the evidence on that question, for the reason that it
is perfectly clear that the verdict of the jury on this trial
was based upon their belief that appellant had actually
fired the shots that killed Gregory, wholly apart from
any alleged conspiracy.

It is said the court erred in giving a self-defense in--
struction. There was an eye-witness to the shooting,
although that witness did not recognize the one shooting,
who was in concealment. Under this evidence there was
no basis for the instruction, but it could not have been
prejudicial to appellant, for it offered him a chance of
acquittal to which he was not entitled. As the instruc-
tion should not have been given and the question played
no part in the trial, its form could not have been preju-
dicial.

It is further complained that the conspiracy instruc-
tion authorized a conviction of appellant if he had con-
spired with Smith Ball, *or any other person or persons,*
to kill Gregory. It is true that the indictment only charged
a conspiracy between the two, and did not embrace any
other person, known or unknown; but, in as much as it
is apparent the conviction is not based upon the con-
spiracy instruction, this could be in no sense·prejudicial.
Not only so, the evidence introduced on the subject of
conspiracy was confined wholly to a conspiracy between
appellant and Ball.

Throughout the trial, when evidence bearing upon
the conspiracy was admitted in the nature of threats or
speeches of Ball in the absence of appellant, the jury was
specifically directed by the court not to consider any such
evidence as against appellant unless they believed from
the whole evidence the conspiracy had been established.
Clearly this ruling was in accord with the opinions of
this court on that subject, if indeed the wording of such
admonitions was not more favorable to appellant than
he was entitled to.

It is complained that the court permitted evidence
of other offenses committed by appellant to go to the
jury, and that this was erroneous. This complaint grows
out of the fact that a search of appellant's premises was
made after the homicide and a quantity of home brew
found at the place, and this evidence admitted. While
it is true that ordinarily evidence of other and different
offenses having no bearing upon the one under investiga-

tion is incompetent, yet in this case that evidence was competent along with a mass of other evidence to establish the motive which appellant had to commit this crime. If he was engaged in the illicit manufacture of, or traffic in intoxicating liquors, and Gregory as an official was undertaking to break up that business, it was certainly competent to show that he was engaged in such business, as furnishing a motive for the commission of the crime.

It is earnestly insisted that the court erred in permitting the witness Hugh Smith, after he had stated that he did not know who the man running down the railroad was, to express his belief or opinion as to who it was, and the case of Foure v. Commonwealth, 205 Ky. 62, is relied upon in support of that view. In the cited case the witness stated she did not recognize a man she saw in the dark, but that she thought it was a certain man; she then further admitted that she did not know whether the man she saw was old or young, large or small, black or white, or whether he was lame or not, and the court merely held that under these circumstances it was error for her to be permitted to express her belief who the man was, when clearly she could have had no basis upon which to found any such belief. In this case, on the contrary, the belief that it was appellant was based upon the witness' statement that he had known him well for two or three years, and that the man running down the railroad was about his size, and wore clothing that looked like his clothing. Surely the expression of a belief based upon such evidence, when there had been a positive identification by another witness of the same man, cannot be said to be prejudicial, if indeed it is not competent.

There are other complaints of the admission and rejection of evidence, but we do not deem them of sufficient importance to be noticed, for in no event could they have been prejudicial.

The defendant, in addition to offering evidence which in some instances modified or explained certain circumstances against him, undertook to establish an *alibi* by a young man who stayed at his home that night. But all these things were questions for the jury, and a careful reading of the record has convinced us that appellant has had a fair trial, and that there is no prejudicial error in the record.

Judgment affirmed.