### Hogan and Phelps v. Commonwealth.

(Decided February 5, 1926.)

### Appeal from Greenup Circuit Court.

1. Criminal Law—Testimony as to Recognition of Defendant by Voice and General Size Held Competent.—In prosecution under Ky. Stats., section 1241a-3, for banding together to disturb and injure prosecuting witness, where latter testified that he went outside of his house at night and ran into defendant, corroborating testimony of witness' daughter and another that from sound of voice and general size they recognized intruder as defendant, held competent.

2. Conspiracy—Conviction of Banding Together to Disturb and Injure Prosecuting Witness Held Not Palpably Against Weight of

Evidence.—In prosecution under Ky. Stats., section 1241a-3, for banding together to disturb and injure a third person, evidence that defendants threw stones against prosecuting witness' house and when he came outside shot at and wounded him with bird shot, held to show that conviction was not palpably against evidence.

MONT WALKER for appellants.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellants were convicted of the offense denounced by section 1241a-3 of the statutes, and from the judgment entered on such conviction they appeal.

The evidence for the Commonwealth shows that on the night of March 17, 1924, Ben Berkley had gone to the home of R. C. Crawford in Greenup county to buy some corn. It was a moonlight night but the clouds were scurrying across the sky and before morning it rained. About half-past eight in the evening some one threw some rocks against Crawford's house. He at once went out the front door to catch the miscreant while Berkley and Crawford's daughter, Imogene, went out the kitchen door for the like purpose. When Berkley got outside, he ran into the appellant, Hogan, who had a gun in his hand and who, according to Berkley's testimony, cursed him on account of some letter which he accused Berkley of having written. Crawford and his daughter corroborate Berkley's statement about the cursing and say that from the sound of his voice and general size, they recognized the intruder as Hogan, whom they had known for some time, although they could not see his face. Their testimony as to such indentification was competent. Lankford v. Commonwealth, 211 Ky. 219, 277 S. W. 239. Hogan, after cursing Berkley, turned and walked over to some peach trees where another person was standing and whom Berkley, Crawford and Imogene identify by his voice and general appearance as the appellant, Phelps, whom they also knew. The two had some conversation and then walked off to a house on an adjoining farm owned by a man by the name of Lyons. Crawford and Berkley thereupon went back into the Crawford home.

They had been in the house about twenty minutes when the house was again rocked. Crawford immediately went outside again to ascertain why he was being thus outraged. When he got down to the fence dividing his property from the Lyons' farm, he discovered not far away under some trees near the Lyons' house four or five men armed with guns who jeered at him. Demanding that they cease their outrageous conduct, he started back towards his house when a rock flew by his head. He then turned and said: "You may kill me, but you can not scare me;" at which, the crowd began firing at him. Some ten or fifteen shots were fired; the sound of the shots indicating that they came from guns of different calibre. Crawford was painfully hit with some bird shot. He positively identifies the appellant, Phelps, as one of the men who were firing at him. His wife and daughter also identify Phelps from the sound of his voice and size as being one of those who fired at him on this occasion.

On the other hand, the appellants' proof tends to show that although it is true that they and certain others who were indicted with them, but not tried with them, were all present in the Lyons' house that night, they had not met there by any agreement but had only casually come together for a social game of pedro; that the party had broken up about half-past eight; that all were well on their way to their respective homes when the shots were fired; that there was no agreement, understanding or conspiracy to do Crawford any harm, and that they and none of them had done Crawford any harm. Both Crawford and the appellants testify that there was no ill feeling existing between them, but that this was a diplomatic gesture is clear when we read Phelps' cross-examination wherein he admitted that there had been a dispute between him and Crawford over a passway. His testimony plainly indicates that there was considerable feeling between them over this matter.

The only ground urged for reversal is that the verdict is flagrantly against the evidence. The outline of the testimony we have given refutes this contention. The jury were authorized to believe from the facts proved by the Commonwealth that there was a concert of action between these appellants and others to do Crawford harm. If they believed this, it was their duty to find appellants guilty as they did, and their verdict ought not to be dis-

turbed. As well said in the case of Owens v. Commonwealth, 211 Ky. 151, 277 S. W. 304:

> "The constitution guarantees a jury trial in these cases and so this court has laid down the following rule as to the effect of the verdict of the jury: 'The credibility of the witnesses is for the jury and this court will not disturb a verdict because the jury believed one set of witnesses rather than another. The verdict must be palpably against the evidence or it cannot be disturbed. . . . ' This rule has been steadily maintained by the court."

The verdict in this case is not palpably against the evidence. On the contrary, it is in accord with it. No error appearing prejudicial to any substantial rights of either of the appellants, the judgment of the lower court is affirmed.